IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICHOLE PORUS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 12 C 9243 |
| RICHARD A. RANDALL, in his official capacity as Sheriff of Kendall County and COUNTY OF KENDALL, | ) ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Nichole Porus[1] has sued Kendall County and Richard A. Randall in his official capacity as Sheriff of Kendall County pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5. Porus asserts claims of a sexually hostile work environment and retaliation for complaints about the work environment. Defendants have moved for summary judgment on both claims. The Court grants defendants' motion for the reasons discussed below.

### Background

The Court takes the following facts from Porus's complaint and from the parties' statements of facts, indicating which facts are and are not disputed. The Court construes all facts and reasonable inferences in the light most favorable to Porus, the

---

[1] Porus's deposition reflects that her last name is now Hoyne, but her amended complaint and her response to the motion for summary judgment refer to her as Porus, so the Court will do the same.

non-moving party. *Phillips v. Cont'l Tire The Americas, L.L.C.*, 743 F.3d 475, 477 (7th Cir. 2014).

**A.     Sexual harassment and attempts at corrective action**

On December 20, 2004, the Kendall County Sheriff's Office hired Porus as a correctional officer. Porus alleges that some of her male supervisors and co-workers subjected her to constant and severe sexual harassment, as described below.

First, Porus had no choice but to change clothes in a co-ed locker room. The room contained bathrooms, but they lacked locks. Porus alleges that male officers undressed in front of her, though when she testified during her deposition, she stated that a deputy named Baird was the only officer to do so. Porus Dep. at 151. In June 2006, Porus submitted an online form to the Equal Employment Opportunity Commission (EEOC) in which she complained about the situation. On July 16, 2006, she sent Sergeant Joseph Gillespie, one of her supervisors, a memo requesting permission to change in a locker room used by female secretaries and dispatchers. Gillespie denied permission, stating that Porus needed to remain in the correctional division. But sometime after Porus sent Gillespie the memo, the Sheriff's Office installed locks both on a room in the locker room where officers changed and on the bathrooms in the locker room. Porus never proceeded with a formal EEOC complaint, evidently having concluded that this particular problem had been resolved.

Sometime before January 2007, Porus claims, Sergeant Gillespie engaged in repeated sexually harassing acts against her. He grabbed and lifted Porus for a few seconds in the locker room, accompanied her to a shooting range where he kissed her neck, told her that he could obtain a promotion for her if she slept with him, asked her to

2

join him at a hotel, asked her and Officer Amber Christoffel-Slaughter to go skinny dipping with him, asked her and Christoffel-Slaughter to kiss each other, sent Porus at least one sexually explicit e-mail, and left gifts, notes, and cards for Porus in her locker. Porus concedes that she did not report any of these acts to anyone, including Commander Sabrina Jennings. Porus implies that Jennings's friendship with Gillespie dissuaded her from complaining to Jennings.

In June 2007, Chief Deputy Terry Tichava played with Porus's bra strap and lifted Christoffel-Slaughter's shirt when Porus and Christoffel-Slaughter were out at a club together. Porus again concedes that she never informed anyone of the incident.

On December 3, 2007, Porus found a tampon in the locker room that had been colored red with a marker. She reported the incident to a sergeant named Flowers, who dismissed it as a joke. Although Flowers informed Jennings of the incident, Jennings issued him a written reprimand for not investigating the matter.

It is undisputed that on December 22, 2007, Sergeant Mike Hawkins was reading roll call in the presence of other officers when he looked at Porus and stated, "HOHOHO is that what you are?" followed by "oh wait you're not offended by that are you?" Pl.'s Ex. 5 at KC 368. Sometime in January 2008, again during roll call, Hawkins asked Porus, "so how does it feel to be a member of the itty bitty titty club?" *Id.* On January 28, 2008, Porus complained to Jennings about both incidents. Jennings investigated the complaint, ordered Hawkins to apologize to Porus, and suspended Hawkins.

Sometime before January 2008, Sergeant Joe Rousseau called Porus and Christoffel-Slaugher to his computer to show them a video entitled "camel toe." Porus's

3

Dep. at 223-24. Neither Porus nor Christoffel-Slaughter ever reported the incident to anyone.

In addition, Porus contends, some of her supervisors and co-workers spread rumors about her engaging in certain sexual relationships, including with an inmate. Porus complained to Jennings about the rumors. Although Porus has not attributed dates to any of the rumors, the fact that Jennings investigated the charge in January 2008 suggests that they occurred before or around that time.

Porus also contends that some of her supervisors and co-workers exchanged sexually explicit e-mails, but she has not described receiving or seeing anyone else receive any particular messages. However, Jennings testified during her deposition that Hawkins sent a female employee a sexually explicit e-mail. Jennings Dep. at 27-28. In addition, Christoffel-Slaughter testified during her deposition that she was forwarded sexually explicit e-mails at least once a week. Christoffel-Slaughter Dep. at 14-15.

Finally, on February 25, 2009, Porus says that Deputy Edmund Belmonte called her a "fucking bitch" in the hallway outside of Gillespie's office after she failed to take a phone message for him and they argued briefly about the incident. Porus Dep. at 104. Porus filed a written complaint with Gillespie, in which she stated in part that "the hostile work environment, slandering and name calling have continued," despite Porus having raised the issue with her superiors. Porus Dep. at 108. After investigating the matter, Jennings suspended Belmonte for one day.

**B.  Residency requirement and termination**

The Kendall County's Sheriff's Office requires all deputies to live within twenty-five miles of the Kendall County Public Safety Center so that they can arrive there

quickly in case of an emergency. During union negotiations that occurred at a time not reflected in the record, union officials informed the Sheriff's Office that some of its officers were living outside of the twenty-five mile radius. As a result, Jennings looked into the officers' addresses. She found that Porus and Deputy Timothy Swisher were the only officers residing outside of the permitted radius.

On February 3, 2009, Jennings met with Porus and Swisher to notify them that they were violating the residency requirement. Jennings gave them ninety days to comply. After the meeting, Swisher moved his residence in order to meet the residency requirement. On May 15, 2009, Porus wrote to Randall asking him to exempt her from the requirement. On May 22, 2009, Randall denied Porus's request. On June 3, 2009, Jennings and Gillespie met with Porus and confirmed that she had not moved. For this reason, Jennings placed Porus on administrative leave. On June 12, 2009, Chief Deputy Tichava, Jennings, and Richard Stomper of the Fraternal Order of Police held a formal investigative hearing with Porus in attendance and found that she continued to violate the residency requirement. On June 16, 2009, Randall terminated Porus for violating the residency requirement.

On August 27, 2009, Porus filed a charge of discrimination with the EEOC, alleging sex discrimination and retaliation. On August 21, 2012, the EEOC issued Porus a notice of right to sue. On November 19, 2012, Porus filed the present suit against the defendants.

## Discussion

"A district court should dispose of an issue on summary judgment if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law.'" *United States v. King-Vassel*, 728 F.3d 707, 711 (7th Cir. 2013) (quoting Fed. R. Civ. P. 56(a)). To avoid summary judgment on a hostile work environment claim, a plaintiff must provide sufficient evidence to create a genuine issue of material fact as to four elements:

> (1) the work environment must have been both subjectively and objectively offensive; (2) her gender or national origin must have been the cause of the harassment; (3) the conduct must have been severe or pervasive; and (4) there must be a basis for employer liability.

*Chaib v. Indiana*, No. 13–1680, 2014 WL 685274, at *8 (7th Cir. Feb. 24, 2014).

**A.  Hostile work environment**

**1.  Legal standards**

Defendants have moved for summary judgment on Porus's hostile work environment claim. They contend that the applicable statute of limitations precludes the Court from considering any conduct other than the February 2009 incident involving Belmonte, which they argue was neither severe nor pervasive enough on its own to create a hostile work environment.

A plaintiff with a Title VII claim must first exhaust administrative remedies by filing and pursuing a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) or, in states like Illinois, with the corresponding state agency. In states that fall into the latter category, the employee must file the charge with the EEOC or state agency within 300 days of the employment practice. A claim is typically time-barred if not filed within that time limit. *See* 42 U.S.C. § 2000e-5(e)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). A discrete discriminatory or retaliatory act occurs, for purposes of the limitation period, on the day that it happens, and the 300-day clock starts to run on that date. *Morgan*, 536 U.S. at 110. And

"discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." *Id.* at 112.  But "[h]ostile work environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct." *Id.* at 115.  In contrast to discrete acts of discrimination, "a single act of harassment may not be actionable on its own," and claims of this type are typically "based on the cumulative effect of individual acts." *Id.* at 115.  Thus, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117.

In *Morgan*, the Court considered a scenario where "[a]cts contribute to a hostile environment on days 1–100 and on day 401, but there are no acts between days 101–400." *Id.* at 118.  The Court found that the acts that occurred on day 401 could "pull the other acts in for the purposes of liability" so long as each act was part of the overall unlawful employment practice.  *Id.*  By contrast, the Court indicated,

> if an act on day 401 had no relation to the acts between days 1–100, or for some other reason, such as certain intervening action by the employer, was no longer part of the same hostile environment claim, then the employee cannot recover for the previous acts, at least not by reference to the day 401 act.

*Id.*  Lower courts have considered the circumstances in which acts that fall within the statutory time period can be understood to be part of a hostile work environment that also involved acts outside of the statutory period.  "To determine whether these acts are part of the same hostile work environment, *Morgan* advises looking at the type of these acts, the frequency of the acts, and the perpetrator of the acts." *Duncan v. Manager, Dep't of Safety, City and Cnty. of Denver*, 397 F.3d 1300, 1309 (10th Cir. 2005).  In *Rowe v. Hussman*, 381 F.3d 775 (8th Cir. 2004), the court "conclude[d] as a matter of

7

law that the acts before and after the limitations period were so similar in nature, frequency, and severity that they must be considered to be part and parcel of the hostile work environment that constituted the unlawful employment practice . . . ."  *Id.* at 781.

Applying these criteria, the Tenth Circuit found in *Duncan* that "no jury could rationally conclude" that "off-color comments and rumor spreading perpetrated by a completely different set of actors" were part of an actionable hostile working environment consisting of "frequent instances of threatening physical and psychological harassment" that occurred eighteen years earlier.  *Duncan*, 397 F.3d at 1309.  In *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70 (2d Cir. 2010), the Second Circuit decided whether a particular comment was sufficiently related to earlier "lewd and teasing comments" "to be part of the same alleged hostile work environment practice[]." *Id.* at 77-78.  In doing so, the court considered that the comment occurred in a different physical area of the building, it was offensive but not lewd, it was neither addressed to the plaintiff nor concerned her, the man who uttered the comment did not belong to the same departments as the men who had made the earlier lewd and teasing comments, and the particular comment occurred nearly one year after the earlier comments.  The court concluded that the comment was insufficiently related to the earlier lewd and teasing comments and that it did not contribute to a claim of a hostile work environment premised on the earlier comments.  Consequently, the court concluded that a hostile work environment claim based on the earlier comments was time-barred.  *Id.* at 78. *See also Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 727 (7th Cir. 2004) (finding that an incident involving a former supervisor yelling at and grabbing an employee in public was unconnected with any hostile work environment that existed three years before).

8

### 2. Application to Porus's claims

It remains for the Court to apply these principles to Porus's case. Porus filed her EEOC charge on August 27, 2009. She cites no conduct other than the Belmonte incident that occurred within 300 days of that date, in other words, on or after October 1, 2008. Porus does cite, however, a good deal of sexually harassing conduct and conditions earlier than that. Thus the threshold question is whether a reasonable jury could consider the Belmonte incident to be sufficiently related to the earlier acts that they may be considered part of the same allegedly hostile work environment.

To this end, the Court considers the nature, frequency, and severity of the Belmonte incident as compared with that of the other alleged acts. The acts that took place before October 2008, or more specifically before January 2008 (Porus cites no other conduct postdating that), consisted mainly of unwanted sexual touching, repeated pressure to engage in sexual relations, and often public sexual derision directed towards Porus, as well as the general circulation of sexually explicit comments and materials. The acts were committed by a number of different Sheriff's Office personnel, but there is no evidence that Belmonte was involved in any of them.

The Belmonte incident consisted of a single, non-sexually oriented but nonetheless gender-based slur aimed at Porus in a public place. *See Passananti v. Cook Cnty.*, 689 F.3d 655, 659 (7th Cir. 2012) ("The jury could reasonably treat the frequent and hostile use of the word 'bitch' to be a gender-based epithet that contributed to a sexually hostile work environment."). Porus herself described the slur as an "isolated incident," and she said that Belmonte never sexually harassed her. Porus Dep. at 94, 114. The most recent acts before the Belmonte incident took place more

than a year earlier and were outside the statutory 300-day period before Porus filed her EEOC charge.  And those acts involved different perpetrators, for the most part occurred repeatedly, and had a much more significant impact on Porus, whether taken together or separately.  Based on the differing nature of the pre-statutory period conduct and the Belmonte incident and the significantly differing levels of frequency and severity, the Court concludes that no reasonable jury could find that the Belmonte incident contributed to or formed part of the same hostile work environment that arose from the earlier conduct that Porus cites.  For this reason, the single incident that occurred within the 300-day period before Porus filed her charge with the EEOC does not permit her to rope in all of the more severe but far earlier harassment.

Porus does not contend that the Belmonte incident created a hostile work environment all on its own. Even if she did, a single use of the offensive term "bitch" against a particular female employee does not amount to the sort of severe or pervasive conduct needed to sustain a hostile work environment claim.  As a general rule, an isolated incident like this is considered insufficient to alter the terms and conditions of employment.  *Adusumilli v. City of Chicago*, 164 F.3d 353, 361 (7th Cir. 1998).

For the reasons discussed above, defendants are entitled to summary judgment on Porus's hostile work environment claim.  Thus the Court need not address whether the acts that fall outside of the statutory limitations period were "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67 (1986) (internal quotations omitted).  Nor does the Court address defendants' contention that they

cannot be held liable for any harassment because they took appropriate corrective action to prevent the conduct from recurring.

**B.	Retaliation**

As indicated earlier, Porus also alleges that defendants terminated her employment in retaliation for her complaints about sexual harassment. Defendants have moved for summary judgment on this claim as well.

An employee may prove retaliation with direct or indirect evidence. Under the indirect method, the employee must first establish a prima facie case by providing proof that she: 1) engaged in activity protected by the law, 2) met the employer's legitimate expectations, 3) suffered a materially adverse action, and 4) was treated less favorably than a similarly situated employee who did not participate in the protected activity. *See, e.g., Vaughn v. Vilsack*, 715 F.3d 1001, 1006 (7th Cir. 2013). If the employee satisfies all four elements, the burden shifts to the employer, who must then state a non-retaliatory reason for having taken the adverse action against the employee. *Id.* If the employer does so, the burden shifts back to employee to show that the claimed non-retaliatory reason is in fact a pretext for retaliation. *Id.* Of course, "[i]f any one of the elements of the plaintiff's prima facie case is lacking, the plaintiff loses." *Hobgood v. Illinois Gaming Bd.*, 731 F.3d 635, 642 (7th Cir. 2013).

Porus's prima facie case is deficient; she has no evidence that she was treated less favorably than a similarly situated employee who had not engaged in protected activity. Rather, the evidence shows the opposite; she was treated the same as her co-worker Swisher, who also was out of compliance with the residency requirement. Porus argues that she and Swisher were not similarly situated because she was a homeowner

and he rented, making it easier for him to relocate. That misses the point. The question in this situation is whether the plaintiff and the alleged comparator were similarly situated with respect to the underlying misconduct (and, in most situations, whether they were similarly situated in terms of their employment position and the supervisory personnel who imposed discipline). *See, e.g., Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 981 (7th Cir. 2014). Swisher was similarly situated to Porus; no reasonable jury could find otherwise: both were deputy sheriffs, both were out of compliance with the residency requirement, and both were subject to discipline by Randall. They were also similarly situated in terms of the basis for applying the residency requirement: both were officers who might have to report to duty quickly in case of an emergency, which was the residency requirement's stated purpose. And as the Court has indicated, Porus cannot show differential treatment; both she and Swisher were told they had to comply with the requirement. Swisher was not fired, but that was because he moved in order to comply with the requirement after he, just like Porus, was given ninety days to do so.

Because Porus cannot establish a retaliation claim using the indirect method of proof, she must rely on the direct method. Under the direct method, an employee must show that she: 1) engaged in protected activity, 2) suffered an adverse action, and 3) would not have suffered the adverse action but for her participation in the protected activity. *Hobgood*, 731 F.3d at 642; *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013) (plaintiff must demonstrate but-for causation to prevail on Title VII retaliation claim).

The only disputed issue here is the third of these elements. To establish that she would not have been terminated but for her sexual harassment complaints, Porus may

rely on either direct or circumstantial evidence. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). As in most cases, there is no direct evidence or "smoking gun" tending to show a retaliatory motive for her termination. Porus must instead rely on a "convincing mosaic" of circumstantial evidence, which may include:

> 1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action.

*Hobgood*, 731 F.3d at 643-44 (7th Cir. 2013). In *Hobgood*, the court characterized these as "rhetorical tools," stating that "[t]he ultimate question the parties and the court always must answer is whether it is more likely than not that the plaintiff was subjected to the adverse employment action because of [her] protected status or activity." *Id*. at 644.

Porus has failed to present evidence from which a reasonable jury could find circumstantial evidence of retaliation. There is nothing that would qualify as suspicious timing. The Sheriff's Office notified Porus on February 3, 2009 that she was not in compliance with the twenty-five mile radius requirement. This was more than one year after she had last made an internal complaint of sexual harassment, and it was before the Belmonte incident occurred. This is insufficient. *See, e.g., Healy v. Chicago*, 450 F.3d 732, 741, n. 11 (7th Cir. 2006) (finding that timing is not suspicious when an adverse employment action does not happen until more than one year after protected activity).

In addition, the record reveals no ambiguous statements or behavior towards Porus or Swisher, her male co-worker who was also notified that he was out of

13

compliance with the residency requirement. Rather, Jennings repeatedly reached out to Porus to ensure that she understood that her job was at stake and made it clear what Porus had to do to avoid termination. And there is no indication that Jennings or anyone else was any less clear to Swisher about the requirement. *Hobgood* provides an example of the sort of ambiguous statement missing from the present case. There, before an investigation had even begun, the defendant's general counsel indicated that the defendant wanted termination to be the first option. *Hobgood,* 731 F.3d at 639. The court found that the comment allowed a reasonable jury to conclude that the defendant had an retaliatory motive, in part because its preference signaled an "extraordinary departure from policy and custom." *Id*. at 645. "Significant, unexplained or systematic deviations from established policies or practices can no doubt be relative and probative circumstantial evidence of discriminatory intent." *Hanners v. Trent*, 674 F.3d 683, 694 (7th Cir. 2012). In this case, however, the twenty-five mile residency requirement was an established policy. And although the Sheriff's Office had not actively applied it for some time, the evidence shows that the decision to do so in February 2009 resulted directly from union officials informing the department that there were officers who were out of compliance.

Finally, as discussed earlier, Porus has offered no evidence from which a reasonable jury could find that similarly situated employees who did not complain of sexual harassment received better treatment than her.

The Court concludes that no reasonable jury could find that Porus satisfies the causation element of a retaliation claim. Defendants are therefore entitled to summary judgment on this claim.

**Conclusion**

For the foregoing reasons, the Court grants defendants' motion for summary judgment [docket no. 29] and directs the Clerk to enter judgment in defendants' favor.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 8, 2014